

Eric H. Jaso, Esq.
ejaso@shnlegal.com

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Direct Dial: (973) 310-4026

December 23, 2024

**VIA ECF**

Hon. Georgette Castner
United States District Judge
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> RE:  *United States of America ex rel. CLIP LLC vs. Ferreira Construction et al.*, No. 3:23-cv-3834-GC-JBD (D.N.J) – Pre-Motion Response

Dear Judge Castner:

We represent Relator CLIP LLC and Michael Andriola in the above-captioned *qui tam* case.  As ordered by the Court (ECF 22) and in compliance with the Court's Individual Preferences concerning dispositive motions, this letter outlines Relator's anticipated responses to Defendants' Motion to Dismiss ("Motion") (ECF 21).  We respectfully request that the Court accept this letter in excess of the three-page limit, given that the Motion claims multiple grounds for dismissal (including unfounded accusations of professional misconduct and ethical violations) and itself far exceeded the Court's page limit.

   1. *Preliminary Statement*

Defendants' Motion, accompanied by vitriolic and factually unfounded accusations of professional misconduct and ethical violations hurled at Michael Andriola[1] and his counsel, glaringly illustrate the maxim that "no good deed goes unpunished."  Relator's Complaint alleges in detail (which detail Relator will supplement in an amended complaint showing, among other things, that corporate owner Nelson Ferreira and his CFO Jerry Killian had personal knowledge and fraudulent intent) how Defendants  intentionally defrauded the Government by applying for Paycheck Protection Program ("PPP") loans they knew or should have known they were ineligible to receive due to the huge headcount and financial size of the Defendants' corporate group.  In short, this very large business did not qualify as a "small business concern" under SBA rules.

---

[1] Mr. Andriola acknowledges that he is the sole member of Relator CLIPS LLC, though he denies any nefarious intent in creating an LLC to prosecute his case, which is a common practice in *qui tam* litigation.  For brevity, Mr. Andriola is referred to herein as "Relator."

Not only did Relator report this fraud to the Government by filing this action, he later reported Defendants' apparent efforts to dupe investigators – *and Defendants' own lead counsel* – by plotting to submit intentionally misleading information and documents in response to civil investigative demands. As we will explain here, and more fully in Relator's response to the Motion, both Relator's counsel and Government counsel took every necessary precaution to avoid infringing on Defendants' legitimate privileges and confidences. However, because Defendants' actions and communications with Relator strongly indicated their intention to perpetuate a further fraud on the Government (and by extension, this Court), Relator and his counsel reported this immediately to the Government. That the Government, after appointing a screening team and examining this information, ultimately proceeded with its investigation, neither constituted a conclusion that no crime-fraud exception applied nor that any of the pertinent information or documents were indeed privileged. Only this Court can make a conclusive determination of such issues. We are confident that any such inquiry would conclude that Relator and his counsel had good-faith bases to question the legality of Defendants' response to the investigation, and that Defendants' accusations are therefore meritless.

> 2. *Neither Relator nor his Counsel Violated any Attorney-Client Privilege or Work Product, nor Circumvent any Discovery Rules.*
>
> a.   No Privilege Existed Between Defendants and Relator, and any Privilege was Waived

Any corporation and/or its executives and employees who engage in fraud against the Government assume the added risk that an honest person with knowledge of the fraud will report it to the authorities, including by filing a *qui tam* action. Given that *qui tam* actions are filed under seal, they likewise assume the risk that the relator may be an employee or a third party with knowledge of internal company matters. Here, Relator is an outside accountant who, as Defendants acknowledge, had *previously* provided services to certain Ferreira entities. *See* Killian Cert. ¶ 4. After being served with CIDs, CFO Killian contacted Relator and communicated with him by phone about the investigation. *Id.* ¶ 5. Killian sent Relator certain documentation and invited Relator to participate in a virtual meeting the following day, during which Killian, Defendants' counsel Louis Modugno, and Relator discussed certain Defendants' PPP loans. *Id.* ¶¶ 6-7.[2]

---

[2] Relator's citation to Defendants' certifications does not imply his agreement with their allegations. Indeed, Relator disputes several factual allegations, including that he "agreed to work with counsel and [Killian] and perform his own analysis" (Killian Cert. ¶ 8), that he "performed his own analysis" (*id.* ¶ 10), and that additional communications and a second meeting took place on September 11, 2023 (*id.* ¶¶ 12-13).

First, Relator did not provide expertise and analysis that was necessary for Defendants' counsel to understand their clients' financial information.[3] Notably, Mr. Killian was Defendants' CFO and an experienced certified public accountant with "over forty years of public accounting experience." Killian Cert. ¶ 1. *See, e.g., In re G-I Holdings, Inc.*, 218 F.R.D. 428, 436 (D.N.J. 2003) "Communication between an attorney and a third party [accountant] does not become shielded by the attorney-client privilege solely because the communication proves important to the ability to represent the client." (citing *United States v. Ackert,* 169 F.3d at 139 (2d Cir. 1999)).

Second, in contrast with initial consultations with an attorney for purposes of retaining counsel, communications with a potential consultant (particularly by a non-attorney) are not presumptively privileged. *See, e.g., PMC v. CBIZ, Inc.*, No. 3:16-cv-204 2018 U.S. Dist. LEXIS 52810, *21(W.D. Pa. Mar. 29, 2018) ("Privilege does not attach simply because counsel communicates with a third party — such as . . . accountants . . . -- to obtain information, seek advice, *or attain professional services.*") (emphasis added)

Third, Defendants' counsel failed – potentially in violation of their own professional responsibilities – to engage Relator as a consultant pursuant to a *Kovel* agreement. "A *Kovel* agreement extends the attorney-client privilege to the agent of an attorney retained to assist the attorney understand the client's information, so that the attorney can provide legal advice in anticipation of litigation." *In re Am. Med. Collection Agency, Inc.*, No. 19-md-2904 (MCA), 2023 U.S. Dist. LEXIS 223286, *40-41 (D.N.J. Oct. 16, 2023). However, even a *Kovel* agreement cannot morph non-privileged communications into protected ones. *See id.* Here, no such agreement existed or was even proposed; indeed, neither Relator nor his firm billed Defendants for the services he purportedly rendered.

Fourth, Defendants admit learning of Relator's communications with Mr. Killian and Mr. Modugno on or about November 7, 2023. Scrivo Cert. ¶ 6; Killian Cert. ¶ 14. Yet even though I have been communicating with Mr. Scrivo about this case since at least September 17, 2024 (tellingly, Defendants raised no concerns about these claimed breaches when Relator was considering voluntarily dismissing this action) Defendants took no steps whatsoever to enforce their purported privilege until filing the Motion.[4] Delay by a party to remedy a disclosure of privileged information can constitute a waiver. *See, e.g., SEC v. Liberty*, No. 2024 U.S. App. LEXIS 12679 *3-4 (3d Cir. May 28, 2024).

---

[3] Given the gravity of Defendants' accusations of professional misconduct against Relator and his counsel, however factually unsupported they will prove to be, Relator will forego describing the facts of his actual communications in this letter, but will be prepared to provide them to the Court *in camera* or as otherwise directed.

[4] Defendants' counsel recently wrote to Relator's counsel making the same accusations of misconduct and demanding the return of privileged material, with the threat of taking legal action.

Before they can hurl accusations of professional misconduct, Defendants bear the burden of proving that their communications with Relator were privileged. *See generally id.* at *29-32. Here, virtually no indicia of such a relationship with Relator existed. Accordingly, no privilege existed;[5] and even if it did, Defendants waived it (along with any work product protections) by failing to take even the most basic steps to formally retain Relator as a consultant, or to enforce the privilege once they learned of the purported breach.

    b.    Neither Relator nor his Counsel Violated Discovery or Professional Responsibility Rules.

Defendants misleadingly conflate intentional circumvention of discovery rules and procedures during the course of civil litigation with the distinct situation of a relator and counsel during the Government's investigation of a *qui tam* case while it remains under seal. Among other things, Defendants claim that Relator had the duty to refuse Mr. Killian's inquiry and/or disclose his role in triggering the Government investigation. That is a straw-man argument. Because the case remained under seal, Relator risked raising Defendants' suspicions that he was the whistleblower if he dodged Mr. Killian, and of course by this Court's order he and his counsel were prohibited from revealing the existence of the case to any third party.

Defendants claim that counsel violated RPC 4.4 also ignore that the official comment to RPC 4.4 expressly excludes documents obtained or received by counsel for purposes of government investigation:

> A document will not be considered "wrongfully obtained" if it was obtained for the purposes of encouraging, participating in, cooperating with, or conducting an actual or potential law enforcement, regulatory, or other governmental investigation.

As described, both Relator's counsel and Government counsel took pains to avoid transgressing any of Defendants' privileges, but this comment further demonstrates the baselessness of Defendants' accusations.[6]

    c.    Relator's Counsel had a Good-Faith Belief that the Crime-Fraud Exception Applied to any Privilege.

While Relator's counsel's privileged communications with Relator and the Government (as well as Defendants' assertions of privilege, however

---

[5] Defendants assert without evidence that the Government "determined" that the communications among Defendants, their counsel, and Relator were privileged. The Government's (and Relator's counsel's) reasonable precautions to avoid breaching any defense privileges do not constitute an admission or finding that such privileges existed. As noted, only this Court can make that determination.

[6] A frivolous or ill-grounded accusation of ethical misconduct can itself violate the rules of professional conduct. *See* RPC 3.1.

unsupported) preclude describing in detail the specific reasons for this conclusion, Relator's counsel had a good-faith belief upon learning of Mr. Killian's communications with Realtor that Defendants were contemplating committing a further fraud upon the Government (and by extension, this Court) by producing intentionally misleading information and documentation in response to the CIDs, and by intentionally withholding material information and documentation responsive to the CIDs. Indeed, counsel's suspicion was heightened by concerns that Messrs. Killian and Modugno could be providing misleading information and withholding material information from Robert C. Scrivo, Defendants' lead counsel (whom the undersigned has known well professionally and respected for many years).

Government counsel had previously informed the undersigned that Mr. Scrivo was representing Defendants in the investigation. I did not know Mr. Modugno personally or by reputation, but understood from Relator that he was Mr. Ferreira's longtime outside counsel. Therefore, when Relator informed his counsel that Mr. Killian had spoken to Relator and asked him to participate in a meeting,[7] Mr. Scrivo's absence from the meeting, coupled with Relator's concern that the financial information and documentation Mr. Killian had sent him omitted material facts, rang alarm bells. I promptly conferred with Henry Klingeman, Esq., his co-counsel, who like me is a former AUSA and experienced criminal attorney, to advise him of Mr. Killian's contacts with Relator (taking care not to reveal any potentially privileged information) and discuss my concerns about potential obstruction of justice by Defendants and the applicability of the crime-fraud exception. Mr. Klingeman agreed with my assessment and that we should promptly report our concerns to the Government.

I then phoned AUSA David Simunovich, the attorney leading the investigation, advised him of Mr. Killian's communications with Relator, the requested meeting, and counsel's concerns about potential obstruction of justice and the crime-fraud exception. Notably, Mr. Simunovich did not direct Relator not to participate in further communications or the meeting. Accordingly, Relator attended the virtual meeting on September 8, and followed up with Mr. Killian on September 9. Again taking precautions not to receive or convey any potentially privileged information, I communicated with Relator after the meeting (which Mr. Scrivo did not attend), concluded that my suspicions were justified, and conveyed that conclusion to Mr. Klingeman and Mr. Simunovich on or about

---

[7] Relator received an email from and had a phone call with Mr. Killian on September 7, 2023, and first informed his counsel of the communication after the call. The undersigned, in an abundance of caution, directed Relator not to recount details of any communications with Mr. Killian or others, but only provide sufficient information for counsel to evaluate whether any privilege applied to such communications and whether the crime-fraud exception might apply. The undersigned was similarly cautious in his communications with the Government when later that day he reported Mr. Killian's contacts with Relator and request for a meeting.

September 11. (I note that Mr. Scrivo has confirmed not participating in these communications. *See* Scrivo Cert. ¶ 6).

Mr. Simunovich subsequently advised me that, pending internal DOJ consultation and his Office's setting up a filter team, Relator should have no further communication with Defendants or their counsel, and that I should not share any potentially privileged information with his Office. After confirming that Relator had not had any such communications, I accordingly directed Relator that he should not do so in the future, and that he should immediately advise me if anyone contacted him. (Indeed, on or about October 25, 2023, Mr. Killian contacted Relator and asked him to prepare a tax return for a Ferreira company. Relator immediately informed me and I advised him to decline, which he did.)

3. *Relator's Counsel Should Not be Disqualified.*

For the reasons stated, Defendants' communications with Relator were either not privileged or they waived any privilege, and the Government did not "determine" that any communications or documents were privileged or that the crime-fraud exception did not apply. As discussed, only this Court can definitively answer those questions, after appropriate factual submissions (in camera if necessary) and legal argument from the parties. And in any event, because Relator's counsel took appropriate precautions to avoid exposure to privileged material (even inadvertent), counsel is not in knowing possession of any such privileged material.[8] Accordingly, no reason exists to disqualify Relator's counsel.

4. *The Complaint Should not be Dismissed.*

Although Relator strongly disagrees with Defendants' contentions that his Complaint is facially deficient, he intends to amend his complaint in lieu of responding to the Motion to Dismiss.

Respectfully submitted,

SPIRO HARRISON & NELSON

__/s/EHJ_____
Eric H. Jaso

---

[8] Relator emailed me two spreadsheets on September 7, 2023 and one on September 9, 2023 that he stated Mr. Killian had sent him but that he had not opened or reviewed. I did not open or review the first two nor forward any of these to my co-counsel or any other person. For reasons I can articulate *in camera*, I believed (and continue to believe) that the third spreadsheet is not privileged due to the crime-fraud exception. These documents remain segregated and preserved.