## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *ex rel*. MICHAEL ANDRIOLA, <br><br>                     Plaintiff-Relator, <br><br>     v. <br><br> FERREIRA CONSTRUCTION CO., INC., <br> AMERICAN PILE AND FOUNDATION <br> LLC, VALIANT ENERGY SERVICES LLC, <br> VALIANT POWER GROUP, INC., d/b/a <br> SM ELECTRIC, and NELSON FERREIRA, <br><br>               Defendants. | **Civil Action No. 3:23-3834-GC-JBD** <br><br> **Hon. Georgette Castner, U.S.D.J.** <br> **Hon. J. Brendan Day, U.S.M.J.** <br><br><br> **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Michael Andriola ("Relator") files this First Amended Complaint against Defendants Ferreira Construction Co., Inc. ("FCC"), American Pile and Foundation LLC ("APF"), Valiant Energy Service LLC ("VES"), Valiant Power Group, Inc., d/b/a SM Electric ("VPG") (collectively, the Corporate Defendants), and Nelson Ferreira ("Ferreira") (collectively, "Defendants"), and alleges as follows:

### <u>INTRODUCTION</u>

1.       This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.    Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

## SUMMARY OF ALLEGATIONS

3.    Plaintiff/Relator Michael Andriola is a Certified Public Accountant who resides in New Jersey.  At the time this action was originally filed, he was a partner at PKF O'Connor Davies, LLP and had previously been employed by Wiss & Company, both public accounting firms.  At both Wiss and PKF, he provided services to certain of the Corporate Defendants.  In that capacity, he was informed of the facts alleged in the Complaint.

4.    At all times relevant to this action, Defendant FCC was a construction company based in Branchburg, New Jersey.

5.    Defendant APF was a site preparation (pile-driving and drilling) contractor based in Branchburg, New Jersey.

6.    Defendant VES was an electrical construction company based in Allentown, Pennsylvania.

7.    Defendant VPG was an electrical construction contractor based in Rahway, New Jersey.

8.    Defendant Ferreira was the President and Chief Executive Officer of FCC and the sole or majority owner of each of the Corporate Defendants.  Ferreira also owned and controlled several other corporate entities, including (but not limited to) Ferreira Construction Trucking, Inc., Ferreira Power Group, LLC, Ferreira Power West, LLC, NatNel LLC, Vanguard Energy

2

Partners, and Valiant Power South, LLC.  Ferreira also owned and controlled a significant number of LLCs which held business-related real estate assets.

9.      In or about 2020, with the knowledge and approval of Defendant Ferreira and his CFO (though without having consulted with Relator), APF, VES and VPG submitted Small Business Administration ("SBA") applications for and received PPP loans.

10.     Among other things, the applications (which were certified to be true and complete) falsely stated that APF, VES and VPG were eligible to receive loans, in part by omitting their affiliation with FCC and other Ferreria-owned and/or controlled entities.  If such affiliations had been truthfully disclosed, APF, VES and VPG would have been rendered too large in both headcount and financial size to qualify as "small business concerns" eligible to participate in the PPP.

11.     In reliance on these materially false statements and certifications, a lender extended the PPP loans to APF, VES and VPG totaling over $9 million.

12.     In or about 2021, APF, VES and VPG sought and obtained forgiveness of the PPP loans, by making further false statements and certifications, including that the borrowers had been eligible to receive the loans.

13.     In further reliance on Defendant's false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States approximately $9.5 million.

14.     Relator filed this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted and forgiven monies that were provided to the

3

Corporate Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties, and recover his reasonable attorneys' fees, costs and expenses.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

15.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

16.     In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732.  This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transacted business in this District, and because the PPP Loan applications were prepared in, executed in, and/or submitted to the lenders from this District.

17.     Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

18.     In accordance with 31 U.S.C. § 3730(b)(2), the original Complaint was originally filed *in camera* and remained under seal until the Government declined to intervene and the Court ordered it unsealed.

19.     Pursuant to 31 U.S.C. § 3730(b)(2), the original Relator provided the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in its possession contemporaneous with the filing of the Complaint.  Relator complied with this provision by serving copies of the Complaint and such disclosure upon the

4

Honorable Philip R. Sellinger, United States Attorney for the District of New Jersey, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

20.     Relator is not aware that the allegations in this Complaint have been publicly disclosed.  Further, to the extent Relator is aware of any public disclosures, this Complaint is not based on such public disclosures.  In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he voluntarily provided all material information in his possession to Government before filing this Complaint, and had knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

21.     Plaintiff/Relator Michael Andriola is a Certified Public Accountant who resides in New Jersey.  At the time this action was originally filed, he was a partner at PKF O'Connor Davies, LLP and had previously been employed by Wiss & Company, both public accounting firms.  At both Wiss and PKF, he provided services to certain of the Corporate Defendants.  In that capacity, he was informed of the facts alleged in the Complaint

22.     Non-party CLIP LLC, the original Relator in this action, is a Delaware limited-liability company.  Relator Mr. Andriola previously assigned CLIP LLC his rights to proceed with a *qui tam* lawsuit and obtain any benefit therefrom.  He has since revoked that assignment.

23.     At all times relevant to this action, Defendant Ferreira Construction Co., Inc. was a privately-held company incorporated in the State of New Jersey in or about 1994.  Its principal place of business was located at 31 Tannery Road, Branchburg, NJ 08876.  FCC maintained regional offices in Florida, New York, California, Rhode Island, and Virginia.  FCC was a civil and utility construction company that handled major construction projects across the United

5

States.  It employed over 1,500 employees across the United States and had annual revenues exceeding $500 million.

24.    Defendant American Pile and Foundation LLC was a privately-held company incorporated in the State of New Jersey in or about 2013.  Its principal place of business was located at 61 County Line Road, Somerville, NJ 08876.  APF was a site preparation (pile driving and drilling) contractor.

25.    Defendant Valiant Energy Services LLC was a privately-held company incorporated in the State of New Jersey in or about 2016.  Its principal place of business was located at 2013 Route 309, Allentown, PA 18104.  VES was an electrical construction company.

26.    Defendant Valiant Power Group, Inc., d/b/a SM Electric, was a privately-held company incorporated in the State of New Jersey in or about December 2013.  Its principal place of business was located at 601 New Brunswick Avenue, Rahway, NJ 07065.  VPG was an electrical contractor.

27.    Defendant Nelson Ferreira was the President and Chief Executive Officer of FCC.

28.    Ferreira owned 100% of FCC, 99% of APF, 51% of VES, and 51% of VPG, at the time the PPP loans were granted and forgiven.  Since then, and prior to the original filing of this action, Ferreira's ownership percentages changed as VES was sold to a third party. FCC's website stated that "Nelson  has established the Ferreira Family of Companies including Vanguard Energy Partners, American Pile and Foundation, Ferreira Power South, Ferreira UTEC, Ferreira Power Group, Ferreira Power West, and Patriot Line Clearing."

29.    Ferreira also owned and/or controlled additional corporate entities, including (but not limited to) Ferreira Construction Trucking, Inc., Ferreira Power Group, LLC, Ferreira Power West, LLC, NatNel LLC, Vanguard Energy Partners and Valiant Power South, LLC.  Ferreira

also owned and controlled a significant number of LLCs which held business-related real estate assets.

30.     Non-party Jerry Killian was the Chief Financial Officer of FCC. He also supervised the finances of the other Corporate Defendants as the representative of Ferreira, their majority owner.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

31.     Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.  The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States.  Further clarifying amendments were adopted in May 2009 and March 2010.

32.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(A), (B), (G).  Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

33.     The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  The statute provides that "no proof of specific intent to defraud" is required.  31 U.S.C. § 3729(b)(1)(B).

34.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."  31 U.S.C. § 3729(b)(2)(A).

35.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery.  The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

36.     In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply

8

with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

37.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

38.     Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses.  This program was called the Paycheck Protection Program ("PPP").   In April 2020, Congress authorized over $300 billion to additionally fund the PPP.  In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

39.     Under the PPP, eligible small businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

40.     A business's eligibility as a "small business concern" depended on its particular industry, as defined under the North American Industry Classification System ("NAICS").  *See generally* 15 U.S.C. §§ 632(a), 636(a)(36) & 694a(9). Generally, commercial contracting

9

companies were ineligible if they employed more than 500 full-time people, unless they were able to satisfy the SBA's alternative size standard, which is defined as (i) the maximum tangible net worth is not more than $15,000,000 and (ii) the average net income after Federal income taxes of the applicant for the two full fiscal years before the date of the application is not more than $5,000,000. *See* 13 C.F.R. Part 121, Subsector 238 (Specialty Trade Contractors).

41.    The SBA also considered whether a business had "affiliates" subject to mutual equity/stock ownership, overlapping management and/or control. *See id.* Subpart A, § 121.103. Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id.* §§ 121.103, 121.104 & 121.106.

42.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

43.    Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner[1] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

44.    The borrower's authorized representative was required to certify, among other things, that:

---

[1] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry. * * *

- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

45.    The borrower's authorized representative was also required to certify and initial, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business was eligible to be loaned.  The applicant was also required to submit documentation showing payroll expenses, among other things.

46.    The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

47.    PPP loan applications were processed by participating financial institutions, which served as the lenders.  Data from the application, including information about the

11

borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.  SBA paid processing fees to lenders.

48.    Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application.  If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

49.    A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.  The applicant's authorized representative was accordingly required to certify that the funds would be used for permissible purposes, and that "if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

## SPECIFIC FRAUD ALLEGATIONS

### The Corporate Defendants and their Affiliates in the Aggregate were too Large to be  Eligible for PPP Loans

50.     In the aggregate, the Corporate Defendants and their affiliates (including FCC and the other Ferreira-owned and controlled corporate entities) were far too large both in the number of employees and in their financial size to be eligible to receive PPP loans.

51.    With regard to employees, FCC stated on its website that it alone employed more than 1,500 people. When combined with the other Corporate Defendants, the number of full-time equivalent employees of the consolidated group well exceeded 500 full-time employees.

52.    With regard to the Corporate Defendants' financial size, their tangible net worth well exceeded the $15,000,000 maximum under the SBA's alternate size standards. In or about April 2022, VES was sold to The Goldfield Corporation d/b/a GridTek Utility Services for approximately $100,000,000. Although not its most current valuation, as of 12/31/2017, FCC had equity in excess of $27,000,000 and fixed assets, net of accumulated depreciation, of approximately $69,000,000.  Thus, the aggregated tangible net worth of FCC and VES alone far exceeded the SBA's alternative business size standards.

53.    Further, in 2019 FCC (alone) reported in excess of $14.6 million in net income, far exceeding the $5 million threshold under the alternative size standard.

54.    In or about March 2020, the Government announced the PPP Loan Program. However, neither Ferreira nor Killian informed Andriola that they intended the Corporate Defendants to apply for PPP Loans or otherwise sought his advice, despite his serving as one of their primary outside accountants.

**Despite being Ineligible under SBA Regulations, APF Applied for and Received a First-Draw PPP Loan, which was Later Entirely Forgiven**

55.    In or about April 2020, APF applied for a PPP Loan in the amount of $2,291,600.00.

56.    Upon information and belief, an authorized representative of APF prepared SBA Form 2483, in which the representative falsely and fraudulently certified that APF was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge

that the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliates, and by omitting information concerning those companies' common ownership.

57.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that APF and the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliated businesses that shared common ownership.

58.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

59.    The authorized representative executed, dated and submitted the Form 2483 to ConnectOne Bank ("COB") of Englewood Cliffs, New Jersey, an SBA participating lender.

60.    On or about April 4, 2020, in reliance on APF's materially false and fraudulent representations and certifications in the loan application, COB issued PPP loan # 5032637003 in the amount of $2,291,600.00 (the "APF Loan").

61.    In or about June 2021, an authorized representative prepared or caused to be prepared the PPP Loan Forgiveness Application Form, which upon information and belief contained a false and fraudulent certification that APF had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the APF Loan.

SHN\883382.1

62.     On or about June 11, 2021, the APF Loan was forgiven in full, causing the United States to reimburse COB for the full amount plus interest, costs and fees, which cost the Government $2,331,015.52.

**Despite being Ineligible under SBA Regulations, VES Applied for and Received a First-Draw PPP Loan, which was Later Entirely Forgiven**

63.     In or about April 2020, VES applied for a PPP Loan in the amount of $4,551,600.00.

64.     Upon information and belief, an authorized representative of VES prepared SBA Form 2483, in which the representative falsely and fraudulently certified that VES was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliates, and by omitting information concerning those companies' common ownership .

65.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that VES and the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliated businesses that shared common ownership.

66.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

67.     The authorized representative executed, dated and submitted the Form 2483 to COB.

15

68.     On or about April 13, 2020, in reliance on VES's materially false and fraudulent representations and certifications in the loan application, COB issued PPP loan # 5032637003 in the amount of $4,551,600.00 (the "VES Loan").

69.     In or about June 2021, an authorized representative of VES prepared or caused to be prepared the PPP Loan Forgiveness Application Form, which upon information and belief contained a false and fraudulent certification that VES had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the VES Loan.

70.     On or about June 11, 2021, the VES Loan was forgiven in full, causing the United States to reimburse COB for the full amount plus interest, costs and fees, which cost the Government $4,629,887.52.

### Despite being Ineligible under SBA Regulations, VPG Applied for and Received a First-Draw PPP Loan, which was Later Entirely Forgiven

71.     In or about April 2020, VPG applied for a PPP Loan, in the amount of $2,417,100.00.

72.     Upon information and belief, an authorized representative of VPG prepared SBA Form 2483, in which the representative falsely and fraudulently certified that VPG was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliates, and by omitting information concerning those companies' common ownership .

73.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and

fraudulently omitted to state that VPG and the other Corporate Defendants, as well as other Ferreira-owned corporate entities, were affiliated businesses that shared common ownership.

74.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

75.    The authorized representative executed, dated and submitted the Form 2483 to COB.

76.    On or about April 13, 2020, in reliance on VPG's materially false and fraudulent representations and certifications in the loan application, COB issued PPP loan #5085127105  in the amount of $2,417,100.00 (the "VPG Loan").

77.    In or about June 2021, an authorized representative of VPG prepared or caused to be prepared the PPP Loan Forgiveness Application Form, which upon information and belief contained a false and fraudulent certification that VPG had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the VPG Loan.

78.    On or about June 11, 2021, the VPG Loan was forgiven in full, causing the United States to reimburse COB for the full amount plus interest, costs and fees, which cost the Government $2,458,674.00.

**Relator Discovers that VES Received a PPP Loan Despite Being Ineligible**

79.    In or about late January or early February 2021, Andriola was conducting a routine year-end audit of VES and preparing its financial statement and noticed that VES had received a PPP loan.  He asked Killian how VES had obtained a PPP loan, since he knew that the size of the Ferreira corporate group would have rendered VES (as well as any other Ferreira

entity) ineligible.[2]  Killian responded that the bank had approved the loan, so the company ran with it.  He added that other Ferreira companies including APF had applied for and received PPP loans.

80.    Andriola expressed concern to Killian about the validity of the PPP loans and advised that, at a minimum, VES's books should not reflect any forgiven indebtedness as income, because if the company were ever audited by the IRS or the SBA, the Government might realize that the loans were improperly obtained.

81.    On or about February 4, 2021, Andriola texted Ferreira to advise that he wanted to discuss how the Corporate Defendants would account for the PPP Loans.  Ferreira responded that "Jerry [Killian] [k]nows where I am nothing to talk about."

82.    Andriola persisted, asking Ferreira why he wanted to "take an aggressive accounting position on this" and telling him that he wanted to "talk through the potential exposure here."  He further noted that if the loans were booked as revenue, there would be an audit obligation, "including the aggregation rules" (*i.e.*, referring to his prior advice to Killian that the Corporate Defendants' aggregate size rendered them ineligible for PPP loans).  Andriola warned that this "could raise a red flag."  Further, he suggested that if the loans were kept on the books "as debt, we let sleeping dogs lie and hopefully the aggregation rules don't get challenged."

83.    Andriola closed his text by telling Ferreira that he was "trying not to put too much in writing on this" but wanted to explain his advice further.  He then said, "I'm trying to protect you; not give you a hard time."

---

[2] All statements described herein are alleged in substance and in part.

84.     Ferreira was dismissive, responding: "Because that's what I want to do."  He added, "If we have to adjust [the accounting] next year we will."

85.     This exchange only deepened Andriola's concerns.  Andriola asked Ferreira and Killian to have Ferreira's general counsel prepare a memorandum to explain how VES was eligible to apply for PPP loans given the aggregation rule, but they refused.  Andriola did not change VES's financial statement, but added a contingency disclosure concerning the loan to the financial statement notes.

86.     Based on Killian's admission that other Ferreira entities had also received PPP loans, Relator discovered that APF and VPG had received loans which subsequently had been forgiven.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

87.     Defendant's materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $9.5 million.

## CLAIMS FOR RELIEF

## COUNT I

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)

88.     Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

89.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, each Defendant knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

90.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

91.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, each Defendant knowingly made, used, or caused to be made or used, false records or statements – *i.e*., the false representations made or caused to be made by each Defendant – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act: Conspiracy
31 U.S.C. § 3729(a)(1)(C)

92.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

93.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, each Defendant conspired with others to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

94.    For example, as alleged herein, Ferreira and Killian conspired with each other and with each Corporate Defendant and each Corporate Defendant's designated representative to

20

prepare and submit false and fraudulent applications for PPP loans and forgiveness thereof to COB, the submission of each false and fraudulent application constituting an overt act in furtherance of the conspiracy.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.      That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.      That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.      That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.      That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.      That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.


DATE:   January 9, 2025


SPIRO HARRISON & NELSON

Eric H. Jaso
363 Bloomfield Avenue
Suite 2C
Montclair, New Jersey 07042
(973) 232-0881
ejaso@shnlegal.com

PORZIO BROMBERG & NEWMAN
Charles J. Stoia
100 Southgate Parkway
Morristown, NJ 07962-1997
(973) 538-4006
cjstoia@pbnlaw.com

KLINGEMAN CERIMELE
Henry Klingeman
100 Southgate Parkway
Suite 150
Morristown, NJ 07960
(973) 714-3474
henry@klingemanlaw.com

*Attorneys for Relator*

SHN\883382.1